1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

In re

JAMES W. KEENAN, d/b/a DATA
PROPERTY SERVICES,

                                        Debtor.

_____

JAMES W. KEENAN,

                                        Appellant,

        vs.

ROSS M. PYLE, et al.,

                                        Appellees.

CASE NO. 10cv1865 - IEG (RBB)

Bankruptcy Case No: 96-00871-PB

**ORDER AFFIRMING JUDGMENT
OF BANKRUPTCY COURT AND
DISMISSING APPEAL**

        Debtor/Appellant James W. Keenan appeals the bankruptcy court's August 4, 2010 order
granting the liquidating trustee's motion for an order: (1) approving final plan distribution; (2)
discharging trustee and exonerating and canceling bonds; and (3) closing the case.  In addition,
Debtor/Appellant appeals the bankruptcy court's August 4, 2010 orders approving: (1) the thirtieth
and final fee application of Ross Pyle, trustee; (2) the thirtieth and final fee application of
Procopio, Cory, Hargreaves & Savitch, attorneys for the trustee; (3) the twenty-fifth and final fee
application of Butz, Dunn & DeSantis, special counsel for liquidating trustee; and (4) the twenty-
eighth and final fee application of Lamb & Meyer, accountants for liquidating trustee.  For the
reasons explained herein, the judgment of the Bankruptcy Court is **AFFIRMED**, and the appeal is

1  **DISMISSED**.

2  <u>**BACKGROUND**</u>

3       Appellant/Debtor James W. Keenan doing business as Data Property Services

4  ("Appellant") filed a voluntary Chapter 11 bankruptcy case in 1996.  Appellee Ross M. Pyle

5  ("Trustee") was appointed as the Chapter 11 Trustee and is currently the duly appointed

6  liquidating trustee of the estate.  By uncontested order dated May 13, 1998, the bankruptcy court

7  confirmed the Joint Plan of Reorganization ("Plan") created by the Statutory Committee of

8  Unsecured Creditors and the then Chapter 11 trustee Mr. Pyle.

9       Under the terms of the Plan, Appellant is entitled to "all residual interest in the Estate."

10  [Record on Appeal ("ROA") at 1942.]  However, the Plan provides three specific "condition[s]

11  precedent to the transfer or Distribution of any residual interest."  [Id.]  First, the Plan mandates

12  that "any and all claims of any kind and nature shall [*sic*] covered under Article XVB . . . have

13  been resolved by final order of the Bankruptcy court."  [Id.]  Second, "all indemnification

14  obligations pursuant to Article XVIIC shall have been satisfied."  [Id.]  Third, "the Liquidating

15  Trustee shall have noticed his intention to close the Case to all classes of creditors and interest . . .

16  ."  [Id.]  The first condition precedent is at issue in this appeal.

17       Article XV.B.2 of the Plan provides:

18      Following the Liquidating Trustee's distribution of all remaining assets to all
    Allowed Claims and prior to any distribution to (a) [Appellant] and (b) an order
19      closing the case, any and all unreleased claims of any kind or nature, if any, against
    the Trustee, are to be resolved by final order of the Bankruptcy Court.
20

21  [ROA at 1955.]  This provision requires the Trustee to resolve any unreleased claims prior to

22  closing the case and distributing the remaining interest in the estate to the debtor.  After the

23  Trustee has resolved these unreleased claims, only then may he "request an order closing the case,

24  discharging the Liquidating Trustee and exonerating the Liquidating Trustee's bond."  [Id.]

25       The parties appear to dispute the time when all the creditors were paid, but they appear to

26  agree that they were all paid by at least late 2000.  [Doc. No. 20 at 9; Doc. No. 26 at 20.]  In an

27  effort to resolve any remaining claims against him, the Trustee moved for an order in aid of

28  closure on November 16, 2001, [ROA at 536-664], which was denied by the bankruptcy court on

December 17, 2001.  [Id. at 669.]  On September 30, 2002, Appellant moved for the return of the

residual estate, [id. at 1291-99], but it was denied by the bankruptcy court on November 11, 2002. [Id. at 1413-14.]

On April 16, 2003, the Trustee moved for another order in aid of closure of the estate, [ROA at 1415-1636], which the bankruptcy court granted on June 9, 2003.  [Id. at 1663-66.] Appellant appealed the June 3, 2003 order granting the Trustee's motion to this District Court, and the Court affirmed the bankruptcy court's order in full and dismissed the appeal with prejudice. See In re Keenan, No. 03-cv-1472 (S.D. Cal., Order filed June 30, 2004).  [ROA at 1845-61.] Appellant then appealed the order to the Ninth Circuit, which dismissed the appeal.  See In re Keenan, No. 04-56242 (9th Cir., Order filed Dec. 28, 2004).  In facilitating the bankruptcy court's June 9, 2003 order to resolve any remaining claims, the bankruptcy court issued further orders in February 2004, September 2004, December 2004, and June 2005.  [ROA at 1997-2015.]

On June 30, 2006, Appellant along with his wife filed a complaint in an adversary proceeding against the Appellees[1] asserting claims for RICO violations, breach of fiduciary duty, civil rights violations, declaratory relief, breach of contract, negligence, and injunctive relief.  See Keenan v. Pyle, Adv. Proc. No. 06-90341-B11 (Bankr. S.D. Cal., filed June 30, 2006).  On February 9, 2007, the bankruptcy court dismissed the complaint with prejudice.  See id. (Order filed Feb. 9, 2007).  Appellant appealed the bankruptcy court's dismissal to this District Court, and the Court affirmed the bankruptcy court's dismissal on the grounds that Appellant's claims were barred by quasi-judicial immunity.  See In re Keenan, 2008 U.S. Dist. LEXIS 25064, at *13-20 (S.D. Cal. Mar. 28, 2008).  Appellant then appealed to the Ninth Circuit, which affirmed the bankruptcy court's dismissal of Appellant's claims on the same grounds.  See In re Keenan, 339 Fed. Appx. 809, 810-11 (9th Cir. 2009).  Appellant then filed a petition for writ of certiorari, which was denied by the Supreme Court on January 11, 2010.  See Keenan v. Pyle, 130 S. Ct. 1078 (2010).

Shortly after, on June 9, 2010, the Trustee filed a motion before the bankruptcy court for an order: (1) approving final plan distribution; (2) discharging trustee and exonerating and canceling

---

[1] The "Appellees" include in addition to Mr. Pyle: Procopio, Cory, Hargreaves & Savitch, attorneys for the Trustee; Butz, Dunn & DeSantis, special counsel for the Trustee; and Lamb & Meyer, accountants for the Trustee.

bonds; and (3) closing the case.  [ROA at 1866-2015.]  The bankruptcy court granted the Trustee's

motion on August 4, 2010.  [Amended Record on Appeal ("A-ROA") at 3881-88.]  On August 4,

2010, the bankruptcy court also issued orders approving: (1) the thirtieth and final fee application

of Ross Pyle, Trustee; (2) the thirtieth and final fee application of Procopio, Cory, Hargreaves &

Savitch, attorneys for the Trustee; (3) the twenty-fifth and final fee application of Butz, Dunn &

DeSantis, special counsel for the Trustee; and (4) the twenty-eighth and final fee application of

Lamb & Meyer, accountants for the Trustee.  [Id. at 3873-80]

Appellant appeals the bankruptcy court's August 4, 2010 orders.  [Doc. No. 1, Notice of

Appeal.]  Appellant seeks: (1) reversal of the bankruptcy court's fee awards and the disgorgement

of all professional fees that were incurred by the Appellees after payment of all the creditors; (2)

reversal of the bankruptcy court's order indemnifying the Appellees from any potential claims;

and (3) reversal of the bankruptcy court's order creating an indemnity reserve and an appeal

reserve.  [Doc. No. 30 at 11.]

## DISCUSSION

**A.      Jurisdiction and Standard of Review**

The district courts of the United States have jurisdiction to hear appeals from final

judgments of the bankruptcy courts.  See 28 U.S.C. § 158(a)(1); In re City of Desert Hot Springs,

339 F.3d 782, 787 (9th Cir. 2003).  The Ninth Circuit has defined a final decision in the

bankruptcy context as one that "'ends the litigation on the merits and leaves nothing for the court

to do but [execute the] judgment.'"  In re Martinez, 721 F.2d 262, 265 (9th Cir. 1983) (quoting

Catlin v. United States, 324 U.S. 229, 233 (1945)).  The bankruptcy court's orders at issue in this

appeal constitute final orders within the meaning of 28 U.S.C. § 158(a)(1).  Therefore, the Court

has jurisdiction over this appeal.

On appeal, the district court reviews the bankruptcy court's findings of fact for clear error

and reviews its conclusions of law de novo.  See FED. R. BANKR. P. 8013(a); In re Int'l Fibercom,

Inc., 503 F.3d 933, 940 (9th Cir. 2007).  Questions of statutory construction are questions of law to

be reviewed de novo.  See In re MacIntyre, 74 F.3d 186, 187 (9th Cir. 1996); In re Brown, 239

B.R. 204, 206-07 (S.D. Cal. 1999).  The bankruptcy court's approval of administrative expenses

and award of attorney's fees is reviewed for abuse of discretion.  See Hale v. United States Tr., 509 F.3d 1139, 1146 (9th Cir. 2007); In re Nucorp Energy, Inc., 764 F.2d 655, 657 (9th Cir. 1985). This means that a court should not reverse an award of fees unless its has "a definite and firm conviction that the bankruptcy court committed clear error in the conclusion it reached after weighing all of the relevant factors."  In re Eliapo, 468 F.3d 592, 596 (9th Cir. 2006).

The parties disagree on the appropriate standard of review for the bankruptcy court's interpretation of the Plan and the confirmation order.  Appellees argue that the abuse of discretion standard applies.  [Doc. No. 26 at 3-4.]  Appellant argues that the de novo standard applies.  [Doc. No. 20 at 5; Doc. No. 30 at 3.]  "Numerous Courts of Appeals have held that a bankruptcy court's interpretation of its own confirmation order is entitled to substantial deference."  Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195, 2204 n.4 (2009) (listing cases).  However, at least the Second Circuit has held that a bankruptcy court's interpretation of the text of a plan and the confirmation order is a conclusion of law reviewed de novo.  In re Duplan Corp., 212 F.3d 144, 151 (2d Cir. 2000).  In addition, the Ninth Circuit has not determined the appropriate standard of review.  See In re Consolidated Water Utilities, Inc., 217 B.R. 588, 590 (B.A.P. 9th Cir. 1998).  Because the Court's analysis below does not turn on the applicable standard of review, the Court declines to resolve the parties' dispute about the appropriate standard.  The Court would reach the same conclusions applying either the de novo or the abuse of discretion standard.

**B.     Equitable Mootness**

As a preliminary matter, Appellees argue that this appeal is equitably moot because Appellant failed to obtain a stay of the end of case order.  [Doc. No. 26 at 13-15.]  In response, Appellant argues that he was not required to seek a stay because the relief he seeks in this appeal would not disturb the distribution of property that has occurred pursuant to the end of case order. [Doc. No. 30 at 10.]

A bankruptcy appeal may become equitably moot when "appellants have failed and neglected diligently to pursue their available remedies to obtain a stay of the objectionable orders of the Bankruptcy Court," thus "permitting such a comprehensive change of circumstances to occur as to render it inequitable . . . to consider the merits of the appeal."  In re Roberts Farms,

1   Inc., 652 F.2d 793, 798 (9th Cir. 1981).  Appellees argue that such a comprehensive change of

2   circumstances has occurred here because pursuant to the end of case order, the Trustee transferred

3   approximately $1.1 million in cash to Appellant and then transferred the remaining property to a

4   state court-appointed receiver, who is not a party to the bankruptcy case.  [Doc. No. 26 at 13-14.]

5   However, in making this argument, Appellees fail to consider the relief Appellant is seeking from

6   this Court.

7        Appellant is seeking three forms of relief in this appeal: (1) disgorgement of professional

8   fees that were incurred after payment of all the creditors; (2) reversal of the bankruptcy court's

9   order indemnifying the Appellees from any potential claims; and (3) reversal of the bankruptcy

10  court's order creating the indemnity reserve and the appeal reserve.  [Doc. No. 30 at 11.]  The

11  Ninth Circuit has explained that "an order compelling disgorgement of [professional] fees and

12  expenses would not require the bankruptcy court to unravel a complicated bankruptcy plan."  In re

13  S.S. Retail Stores Corp., 216 F.3d 882, 884 (9th Cir. 2000).  Therefore, an appellant's failure to

14  obtain a stay before appealing a bankruptcy court's award of fees does not by itself render an

15  appeal equitably moot.  See id.  Similarly, both reversal of the order indemnifying Appellees and

16  reversal of the order creating the two reserves would not require the bankruptcy court to unravel a

17  complicated bankruptcy plan.  Therefore, effective relief may be afforded in this case without the

18  unwinding of a complex bankruptcy plan, and the appeal is not equitable moot.  See In re Focus

19  Media, Inc., 378 F.3d 916, 923 (9th Cir. 2004); In re S.S. Retail Stores, 216 F.3d at 884-85.

20  **III.    Disgorgement of Fees**

21       Appellant argues that all of the fees incurred by the Trustee and his professionals after the

22  payment of all the creditors should be disgorged.  [Doc. No. 20 at 13.]  In support of this

23  argument, Appellant contends the Trustee breached his fiduciary duty to promptly and efficiently

24  settle the case by not closing the estate over a decade ago upon the confirmation and payment of

25  all creditors.  [Id. at 5-8.]

26       Although a trustee may have an obligation to preserve and protect the estate for the benefit

27  of the debtor and creditors, see, e.g., In re Walter, 83 B.R. 14, 19 (B.A.P. 9th Cir. 1988); In re

28  American West Airlines, Inc., 166 B.R. 908, 913 (Bankr. D. Ariz. 1994), Appellant is incorrect,

that the estate could have been closed a decade ago simply because all creditors may have been paid.  Appellant relies on language in Article IV.J of the Plan stating:  "After payment of all Claims in full with interest, the Liquidating Trustee shall transfer all residual interest in the Estate to the Debtor."  [ROA at 1942.]  However, Appellant fails to consider the remaining language in Article IV.J, which provides:  "As a condition precedent to the transfer or distribution of any residual interest, (i) any and all claims of any kind and nature shall [*sic*] covered under Article XVB below have been resolved by final order of the Bankruptcy court . . . ."  [Id.]  Article XV.B.2 of the Plan further provides:  "Following the Liquidating Trustee's distribution of all remaining assets to all Allowed Claims and prior to any distribution to:  (a) [Appellant] and (b) an order closing the case, any and all unreleased claims of any kind or nature, if any, against the Trustee [and his Professionals] . . . are to be resolved by final order of the Bankruptcy Court."  [Id. at 1955.]  The language in these two provisions require the Trustee to resolve any unreleased claims prior to closing the estate.  Therefore, even if all the creditors were paid by late 2000, the Trustee still could not have closed the estate until all the unreleased claims were resolved by final order.

The record shows that Appellant's claims were not resolved by final order until the Supreme Court denied Appellant's petition for certiorari in Appellant's adversary proceeding against the Trustee on January 11, 2010.  See Keenan, 130 S. Ct. 1078.  Therefore, the estate could not have been closed until January 11, 2010, and not in late 2000.  Moreover, Appellant's argument that the estate should have been closed more than a decade ago has already been rejected by this District Court in a prior appeal as barred by collateral estoppel and the law of the case doctrine.  See In re Keenan, No. 03-cv-1472 (S.D. Cal., Order filed June 30, 2004).  [ROA at 1853.]

Appellant also appears to argue that despite the above provisions, the estate should have still been closed a decade ago because at that time Appellant had no pending claims against the Trustee.  [Doc. No. 20 at 8.]  However, this contention is not supported by the language of the Plan.  Article XV.B.2 of the Plan requires that "any and all unreleased claims of any kind or nature" must be resolved by final order prior to the closing of the estate.  [ROA at 1955.]  This language refers to any and all claims not just claims that were pending at the time the creditors

were paid.  Further, the Court agrees with the bankruptcy court that Appellant's contention that a claim does not exist as long as it is not pending is "nonsense."  [A-ROA at 3856.]  "Bankruptcy law defines when a claim accrues, and the claim exists, whether it's asserted or not."  [Id.]

As a separate reason for disgorgement, Appellant argues that the Trustee inexcusably delayed the closure of the case for at least 4 years by failing to take action to resolve the unasserted claims until he moved for an order in aid of closure on April 16, 2003.  [Doc. No. 20 at 8-9.]  First, Appellant is incorrect that the Trustee did not take action to resolve the unasserted claims until early 2003.  The record shows that the Trustee moved for an order in aid of closure on November 16, 2001, [ROA at 536-664], which was opposed by Appellant and denied by the bankruptcy court.  [Id. at 665-69.]  Second, even assuming there was a delay, Appellant has not shown that either he or the estate was prejudiced in any way by the delay.  As stated above, the estate could not have been closed until all of Appellants unreleased claims were resolved by final order.  [See ROA at 1942, 1955.]  Appellant has not shown that his claims could have been resolved earlier than January 11, 2010 when the Supreme Court denied his petition for certiorari in his adversary proceeding against the Trustee.  Appellant has also not shown that the trustee could have obtained an order in aid of closure from the bankruptcy court  earlier than June 2003.  Accordingly, the Court declines to disgorge any of the fees awarded by the bankruptcy court and affirms the bankruptcy court's fee awards.

**IV.    Indemnity Provision in the Order**

Appellant seeks reversal of the portion of the bankruptcy court's order indemnifying the Appellees.  [Doc. No. 20 at 10-13; Doc. No. 30 at 9-11.]  The bankruptcy court's order states:

> The Trustee and all persons entitled to indemnity under the Plan . . . are released, indemnified and held harmless from any and all liabilities, claims, costs, damages (proximate or consequential) and expenses (including attorney's fees) which may be made assessed or otherwise incurred by the indemnified parties arising out of or related to obligations or from liabilities (fixed or contingent) arising from events occurring after the commencement of the Case.

[A-ROA at 3883.]  The Plan itself provides for Appellees' indemnification from such claims. Specifically, Article XVII.C of the Plan in similar language provides:

> From and after the Effect Date, the Estate . . . will indemnify and hold harmless (a) the Trustee, his Professionals [and] (b) the Liquidating Trustee, his Professionals . . . . from and against any and all Liabilities, claims, costs, damages, (proximate or

1

2

3
> consequential) and expenses (including attorneys' fees) which may be made, assessed, or otherwise incurred by the indemnified parties arising out of or relating to obligations or from liabilities (fixed or contingent) arising from events occurring post-petition.

4

5

6
[Id. at 1957.]  Therefore, it was proper for the bankruptcy court to indemnify the Appellees pursuant to Article XVII.C of the Plan.  Moreover, Appellant provides no authority or argument explaining why the Appellants are not entitled to indemnification under Article XVII.C of the Plan.

7

8

9

10

11

12

13

14

15
In explaining why the order should be reversed, Appellant only provides various arguments explaining why the Appellees are subject to liability in certain circumstances.  [See Doc. No. 20 at 10-11.]  For example, Appellant cites to cases where courts have found a trustee personally liable for both intentional and negligent violations of duties imposed upon him by law, see, e.g., In re Cochise College Park, 703 F.3d 1339, 1358 (9th Cir. 1983), and Appellant notes that under 11 U.S.C. § 323, a trustee may be sued.  [Doc. No. 20 at 10-11.]  In addition, Appellant notes that Article VII.C of the Plan entitled "Liability of the Liquidating Trustee" authorizes certain claims against the Trustee, and Appellant also argues that the Appellees are not entitled to immunity. [Id.]

16

17

18

19

20

21

22

23

24

25

26

27

28
Appellant appears to be confused about the concept of indemnification.  "Indemnity . . . is 'defined as the obligation resting on one party to make good a loss or damage another party has incurred.'"  PPG Industries, Inc. v. Transamerica Ins. Co., 20 Cal. 4th 310, 318 (1999).  Indemnity does not mean that the indemnified party is immune from liability.  To the contrary, where an indemnity provision protects against liability, the indemnitor's obligation arises when the liability of the indemnitee is established.  See Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co., 45 Cal. App. 4th 1, 107 (1996); Carson Harbor Vill., Ltd. v. Unocal Corp., 287 F. Supp. 2d 1118, 1195 (C.D. Cal. 2003).  Therefore, an indemnity provision contemplates that the indemnified party will be liable in certain situations, and the fact that the Appellees may be found liable for certain claims is not inconsistent with bankruptcy court's order indemnifying them.  Accordingly, the Court declines to reverse the portion of the bankruptcy court's order indemnifying the Appellees.

///

1    **V.      The Indemnity Reserve and The Appeal Reserve**

2            Appellant seeks reversal of the portion of the bankruptcy court's order creating an

3    indemnity reverse of $1,000,000 and an appeal reserve of $200,000.  [Doc. No. 20 at 12-13; Doc.

4    No. 30 at 9, 11.]  Appellant argues that there is no legal basis for the bankruptcy court's creation of

5    these two reserves.  [Doc. No. 20 at 12.]  Appellant is incorrect.  Article VI.G of the Plan provides:

6            Prior to making distributions under this Plan, the Liquidating Trustee will set aside
             Cash reserves sufficient to cover the estimated costs of administering this Plan . . . .
7            Funds reserved will be held by the Liquidating Trustee and will be used to pay the
             costs of administering this Plan and satisfying all Disputed Claims when such
8            Claims, if any, become Allowed.  Any excess Cash or other assets held by the
             Liquidating Trustee for administering the Plan or held in respect of the disallowed
9            portion of any Disputed Claims will become Available Cash.  This reserve shall
             include amounts necessary to pay the fees of the Liquidating Trustee, professional
10           expenses and post-confirmation U.S. Trustee fees and taxes.  The Liquidating
             Trustee shall have sole and exclusive discretion in setting the amount of reserves in
11           the administration of the Plan.

12   [ROA at 1944.]  Therefore, Article VI.G of the Plan provides the legal authority for creating the

13   reserves.  In his reply brief, Appellant admits that Article VI.G forms the basis for the indemnity

14   reserve, but Appellant argues that the additional appeal reserve is duplicative.  [Doc. No. 30 at 9.]

15   Article VI.G states that the reserves shall include amounts necessary to pay all of the Trustee's

16   professional expenses incurred in administering the Plan.  [ROA at 1944.]  Those expenses can

17   arise both on appeal of the bankruptcy court's orders and in defense of claims that are brought

18   against the Appellees.  Accordingly, these two reserves are not duplicative, and it was proper for

19   the bankruptcy court to establish the two different reserves.

20           Appellant also argues that there is no basis for the Trustee's estimates that the amount of

21   cash in the two reserves should be $1,000,000 and $200,000 respectively.  [Doc. No. 20 at 12.]

22   With respect to the appeal reserve being set at $200,000, the Trustee presented to the bankruptcy

23   court uncontradicted evidence in the form of a declaration from the appellate attorney who

24   represented the Trustee in the 60-plus prior appellate proceedings related to this case.  [A-ROA at

25   3835-48.]  The attorney concluded in the declaration that based on his background and experience

26   and his work on this case, "the amount of reasonable attorney fees and expenses in representing

27   the Trustee related to the potential appeals . . . could easily total $200,000."  [Id. 3838 ¶ 6.]

28   Therefore, there was adequate factual support for setting the appeal reserve at $200,000.

With respect to the indemnity reserve being set at $1,000,000, this amount was established by the bankruptcy court in its June 3, 2003 order in aid of closure.  [ROA at 1665.]  The record shows that Appellant never challenged the $1,000,000 amount before the bankruptcy court in opposing the Trustee's motion for the June 3, 2003 order.  [Id. at 1648-52.]  Appellant appealed the June 3, 2003 order to this District Court, and the Court affirmed the bankruptcy court's order in full and dismissed the appeal with prejudice.  See In re Keenan, No. 03-cv-1472 (S.D. Cal., Order filed June 30, 2004).  [ROA at 1845-61.]  Appellant then appealed the order to the Ninth Circuit, which dismissed the appeal.  See In re Keenan, No. 04-56242 (9th Cir., Order filed Dec. 28, 2004).   Accordingly, Appellant has waived any challenge he might have to the indemnity reserve being set at $1,000,000, and any challenge would also be barred by the "law of the case" doctrine.  See Peterson v. Highland Music, Inc., 140 F.3d 1313, 1321 (9th Cir. 1998) (stating that arguments on appeal that were not presented or developed before the lower court are waived); Manufactured Home Cmtys., Inc. v. Cnty. of San Diego, 655 F.3d 1171, 1181 (9th Cir. 2011) ("The law of the case doctrine precludes a court 'from reconsidering an issue previously decided by the same court, or a higher court in the identical case.'").

Finally, Appellant argues that although the June 3, 2003 order provided for the creation of an indemnity reserve, it did not allow for the reserve to be used in defense of meritorious claims.  Appellant's contention is without merit.  In reviewing the June 3, 2003 Order, the Court does not find any language restricting the reserve to only be used in defense of unmeritorious claims.  The order only states that "a reasonable reserve of not less than $1 million to defend additional claims shall be held by the Trustee for a period of five years from such time as an order closing the Estate becomes a Final Order."  [ROA at 1665.]  Accordingly, the Court declines to reverse the portion of the bankruptcy court's order creating the indemnity reverse and the appeal reserve.

///

///

///

///

///

1

## CONCLUSION

2          For the above reasons, the Court **AFFIRMS** the bankruptcy court's August 4, 2010 orders

3    and **DISMISSES** the appeal with prejudice.  The Clerk is directed to close the case.

4          **IT IS SO ORDERED.**

5    **DATED:**  December 13, 2011

6                                                                **IRMA E. GONZALEZ, Chief Judge**
                                                                 **United States District Court**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 12 -

10cv1865